UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBRA A. B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-CV-676-CDL |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision denying benefits.

**I.     Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by

---

[1]     Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.   Procedural History

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on October 25, 2017. (R. 15). She alleges that she became disabled due to a ruptured disc in her back, a shoulder impairment, a "nervous" condition, and depression. (*See* R. 70, 225). Plaintiff was fifty-six years old on the alleged onset date of December

31, 2011.[2] Prior to the onset date, she worked as a user support analyst and a receptionist. (R. 25). The Commissioner denied plaintiff's application on initial review and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a hearing on January 21, 2020, after an earlier hearing set for September 11, 2019 was continued to allow the ALJ to review additional medical records presented at that hearing by plaintiff's counsel. (*See* R. 15, 64-65). The January 21, 2020 hearing included testimony by plaintiff and a Vocational Expert (VE). On February 7, 2020, the ALJ issued a decision denying disability benefits. (R. 12-27). On October 22, 2020, the Appeals Council denied plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1). Accordingly, the Court has jurisdiction to review the ALJ's February 7, 2020 decision under 42 U.S.C. § 405(g).

## III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe

---

[2] The ALJ noted that plaintiff's earnings records shows that she has acquired sufficient quarters of coverage to remain insured through December 31, 2011 ("date last insured (DLI)"). (*See* R. 16-17; *see also* R. 215-216). Thus, the period between plaintiff's alleged December 31, 2011 onset date and her DLI establishes a one-day relevant period by which plaintiff must establish disability. (*See* R. 16-17).

3

impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

### A. Step One

The ALJ determined at step one that plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of December 31, 2011 through her DLI of December 31, 2011. (R. 17).

### B. Step Two

The ALJ determined that plaintiff had the following severe impairments during the relevant period: degenerative disc disease (DDD), right shoulder degenerative joint disease, status post-right rotator cuff tear, and biceps tendon rupture. (R. 18). The ALJ found that plaintiff's depression did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore nonsevere. *Id.*

4

Regarding plaintiff's mental impairment of depression, the ALJ addressed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. (R. 18-19; *see* 20 C.F.R. § 404 Subpt. P App'x 1). To satisfy the paragraph B criteria, a claimant's mental impairments must result in at least one extreme or two marked limitations in four areas of functioning. 20 C.F.R. § 404 Subpt. P App'x 1. Here, the ALJ found that plaintiff had **no** limitation in understanding, remembering, or applying information; a **mild** limitation in interacting with others; a **mild** limitation in concentrating, persisting, or maintaining pace; and **no** limitation in adapting or managing oneself. (R. 18-19). Because plaintiff did not have at least one extreme or two or more marked limitations, the paragraph B criteria were not satisfied. (R. 19).

### C.  Step Three

The ALJ found that plaintiff's physical and mental impairments during the relevant period did not meet or equal the criteria for any Listing. (R. 19-20). The ALJ considered plaintiff's physical impairments in connection with Listing 1.00 et seq. (Musculoskeletal System), specifically considering Listing 1.04, pertaining to disorders of the spine, and Listing 1.02, pertaining to major dysfunction of a joint. *Id.* In accordance with this finding, the ALJ proceeded to step four.

### D.  Step Four

The ALJ found that plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: The [plaintiff] could lift and/or carry five to ten pounds. The [plaintiff] could sit, stand, or

5

> walk six out of eight hours with normal breaks. The [plaintiff] could push or pull five to ten pounds.

(R. 20). The ALJ found that plaintiff had past relevant work as a receptionist, which is categorized as sedentary exertion level, semi-skilled work, with Specific Vocational Preparation (SVP) level 4 and a user support analyst, which is categorized as sedentary exertion level, skilled work, with SVP level 7. (R. 26). Citing the VE's testimony as to a hypothetical person with plaintiff's RFC, the ALJ found that plaintiff would be able to perform her past work as a receptionist and user support analyst, both as actually and as generally performed. *Id*. Accordingly, the ALJ found plaintiff not disabled at step four. *Id.*

## IV. Discussion

Plaintiff asserts two points of error with the ALJ's findings at step four. Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence, because the medical evidence in the record supports a more restrictive RFC. Plaintiff also challenges the ALJ's finding that plaintiff can perform her past work. The Commissioner argues that the ALJ's findings at step four regarding plaintiff's RFC and her ability to perform her past work are supported by substantial evidence and free of reversible error.

### A. RFC Determination

In determining a claimant's RFC, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as

6

significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)); *see also Bigpond v. Astrue*, 280 F. App'x 716, 718, 2008 WL 2222016 (10th Cir. 2008).  The focus of disability determination is on the functional consequences of a condition, not the mere diagnosis.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (noting that an ALJ's failure to include an alleged limitation in the RFC is not error if the limitation is not supported by the medical record).

Plaintiff contends that she did not, at the relevant time period, have the ability to work at the sedentary level full-time and that the ALJ's RFC determination is unsupported by substantial evidence in the record. Plaintiff claims that her impairments are "extremely complex," and that the record includes medical opinions that support a more restrictive RFC. (*See* Doc. 10 at 7).  The ALJ must evaluate and "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings" in a claimant's record. 20 CFR § 404.1520c(b).[3] The ALJ's decision must articulate how she considered the medical opinions or prior administrative medical findings from each medical source. *Id.* § 404.1520c(b)(1). The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how she considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative medical findings. *Id.* § 404.1520c(b)(2). The ALJ must

---

[3]   For claims filed after March 27, 2017, such as Plaintiff's claim here, the Commission does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a).

7

also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id.* § 404.1520c(c).

### 1. Right Shoulder

Initially, the ALJ noted that "the majority of the medical evidence of record relates to a period prior to the alleged onset date," when plaintiff was treated for a July 2005 on-the-job injury to her right shoulder, neck and back. (*See* R. 21). Although the medical evidence relating to plaintiff's right shoulder impairment is dated well before her alleged onset date and DLI, plaintiff contends that this medical evidence supports her claim that she was not capable of performing the lifting requirements outlined in the RFC during the relevant period. Plaintiff notes that she underwent surgeries on her right rotator cuff on October 26, 2005 and December 13, 2007. *Id.* at 2-3 (citations omitted).

Plaintiff also cites medical evidence in the record which indicates that she continued to have problems with her right shoulder despite her two shoulder surgeries. For instance, plaintiff was seen by C. Scott Anthony, D.O. for pain management on January 12, 2009, where she "complained of right shoulder and neck pain." *Id.* at 4. (citing R. 481). Plaintiff cites the November 9, 2009 medical treatment notes of John S. Marouk, D.O., who found that plaintiff "has limited range of motion of her right shoulder girdle." *Id*. at 7. (citing R. 449).

Despite some evidence of limitations and pain in plaintiff's right shoulder, the ALJ's RFC determination is well-supported by the medical evidence of record. The ALJ thoroughly discussed the medical evidence related to plaintiff's right shoulder impairments

8

and found that "the prevailing trend is that [plaintiff's] shoulder improved after a second surgical intervention and that her symptoms were otherwise controlled with medication." (R. 24). For instance, the ALJ cited the February 15, 2008 treatment note, where Thomas A. Marberry, M.D. noted that plaintiff had "excellent range of motion" two months following her second right shoulder surgery. (R. 22 (citing Ex. 14F at 3)). The ALJ notes that by May 2008, Dr. Marberry found that plaintiff "had reached maximum medical improvement (MMI) and needed no supervised orthopedic follow-up." *Id.* (citing *id.* at 2).

The ALJ noted that plaintiff was seen by Terrill Simmons, M.D. on June 2, 2008, where plaintiff complained of shoulder pain. *Id.* (citing *id.* at 1). Dr. Simmons suggested a "steroid injection or arthrogram to rule out a recurrent tear," but noted that plaintiff "was moving the shoulder fairly well." *Id.* (citing *id.* at 1). The ALJ addressed the January 12, 2009 report of Dr. Anthony, noting that plaintiff "appeared in moderate distress," but that "she reported improved shoulder pain since surgery." (R. 23). The ALJ noted the physical examination revealed that plaintiff's "right shoulder had fairly good range of motion with mild crepitus and tenderness." *Id.*

The ALJ also discussed the November 9, 2009 report of John S. Marouk, D.O., where he "observed limited range of motion of the right shoulder girdle and shoulder." (R. 24). However, the physical examination by Dr. Marouk revealed that plaintiff's "d[]eep tendon reflexes were symmetric and brisk and Hoffman's testing was negative." *Id.* The ALJ acknowledged that plaintiff continued to report pain, but the ALJ found that "later examinations note [plaintiff] was moving the shoulder fairly well," and "the record does not demonstrate any evidence of a new tear." *Id.* (citing Ex. 14F at 1; Ex. 20F at 1-2). In

9

light of this evidence, the ALJ reasonably found that as of the alleged onset date, plaintiff could lift and/or carry, push and/or pull five to ten pounds. (R. 20).

### 2. Postural Limitations

Plaintiff argues that the ALJ improperly minimized or ignored evidence in the record that supports additional postural limitations in the RFC due to her inability to sit, stand, walk, or bend for prolonged periods of time. Plaintiff notes that one of her treating physicians, Terrill Simmons, M.D., opined on January 30, 2008 that plaintiff "would be unable to bend, lift or walk long periods of time or sit in an awkward position for long periods of time" due to her back injury. *Id*. (citing R. 389). The ALJ's decision addressed Dr. Simmons' treatment notes from that visit, in which he reviewed results of MRI imaging of plaintiff's cervical spine. (R. 22-23; *see* R. 389-390). As the ALJ explained, Dr. Simmons

> recommended conservative treatment related to the neck, including strengthening exercises. For the lumbar spine, he recommended a lumber epidural steroid injection and "intense physical therapy". If those were to fail, he expected to recommend surgical intervention. On exam, she had restricted range of motion but no neurological deficits. Sensation and motor movement were intact and she denied any bowel or bladder dysfunction.

(R. 22-23). This accurately summarized Dr. Simmon's comments. (*See* R. 389). Although Dr. Simmons indicated plaintiff's lumbar spine injury would result in some limitations, he indicated that an opinion on plaintiff's "work status is not really appropriate at this time," because plaintiff was not working due to her shoulder injury at the time. (R. 389). As such, the ALJ's decision reflects an appropriate consideration of this letter.

Additionally, plaintiff points to evidence from C. Scott Anthony, M.D., who issued a series of letters after examining plaintiff in connection with examination for a worker's compensation claim. In a letter dated December 1, 2010, Dr. Anthony stated that prolonged sitting and standing "tend to exacerbate her symptoms." (R. 489). However, in the same letter, Dr. Anthony states that plaintiff "has been doing reasonably well" overall and that she "walks two miles a day." *Id*. He discussed treatment options for her back pain to include medications and stretching. Dr. Anthony stated that he was "optimistic" that plaintiff would "continue to improve as long as she remains diligent in regards to her exercises." *Id*. The ALJ noted that Dr. Anthony observed plaintiff seemed "relatively functional" despite her pain symptoms and that she appeared neurologically intact. (R. 25).

Earlier letters from Dr. Anthony indicate that he believed plaintiff would be able to return to sedentary work after completing treatment. (*See* R. 487 (August 21, 2009 note stating "I do believe [plaintiff] can return to work in a sedentary type position," using non-opioid medications for pain and muscle spasms); R. 485 (June 8, 2009 letter stating that plaintiff may benefit from injections, and "what we are trying to do is treat her in the most conservative fashion so that we can then proceed with her returning to work.")). Thus, as the ALJ noted, Dr. Anthony's opinions include statements that are consistent with plaintiff's ability to perform a sedentary RFC. Moreover, the ALJ's decision reflects adequate consideration of Dr. Anthony's opinion letters. (*See* R. 23-25). *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) (where the "ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened").

Plaintiff also cites the November 9, 2009 examination notes of Dr. Marouk, D.O., indicating that plaintiff had "tenderness in her lumbar spine" and "positive straight leg raising tests." (R. 449). The ALJ's decision acknowledged this evidence, noting that Dr. Marouk also observed that plaintiff maintained good motor strength. (R. 24). Subsequently, "on January 27, 2010, Dr. Marouk reviewed imaging demonstrating grade I spondylolisthesis at the L4-L5 and L5-S1 levels as well as disc protrusions at both levels. He recommended a lumbar decompression and fusion. He provided a lumbar support brace to help her to maintain her fusion after surgery." *Id*.

Plaintiff cites the medical record from Springer Clinic dated July 7, 2005, where a form indicated that plaintiff "could not stand during the work day." *Id.* at 7. (citing R. 345). However, the record does not identify the provider who completed the form, and plaintiff fails to explain how this item from six years prior to her alleged onset date is relevant to her condition in late 2011. Moreover, as the Commissioner points out, evidence that is more closely related in time indicates that plaintiff reported that she walked two miles per day. (See R. 489). As such, plaintiff has not met the burden to show that this evidence merited discussion in finding that plaintiff could perform a sedentary RFC.

As discussed above, the ALJ's decision shows that she considered the medical evidence related to plaintiff's right shoulder and assessed an RFC that limits plaintiff to sedentary work with lifting limitations to accommodate her impairments. The ALJ supported this conclusion with reference to specific evidence in the record. Nothing further is required. Further, even if the evidence could support a different finding, the Court cannot displace the agency's choice between two fairly conflicting views. *See Oldham v. Astrue*,

509 F.3d 1254, 1257-58 (10th Cir. 2007). Plaintiff's argument simply invites the Court to improperly re-weigh the evidence. *See Noreja*, 952 F.3d at 1177; *see also Lax*, 489 F.3d at 1084. Accordingly, substantial evidence supports the lifting limitations assessed in the ALJ's RFC determination.

  **B. Past Relevant Work**

In assessing a claimant's ability to perform past relevant work, an ALJ must: 1) evaluate the claimant's RFC; 2) determine the demands of the claimant's past relevant work; and 3) compare the claimant's RFC with his past relevant work to determine whether the claimant can do this work. *See* Social Security Ruling (SSR) 82-62, 1982 WL 31386, *2-3 (Jan. 1, 1982); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "An ALJ may rely on information supplied by the VE at step four." *Doyal*, 331 F.3d at 761 (internal citation omitted). An ALJ is permitted to "quote[] the VE's testimony approvingly, in support of his own findings at phases two and three of the [step-four] analysis." *Id*. However, an ALJ may not "make RFC findings and then to delegate the remaining phases of the step four analysis to the [VE], because in such cases, 'the remainder of the step four assessment takes place in the VE's head' and 'we are left with nothing to review.'" *Id*. (citing *Winfrey,* 92 F.3d at 1025). "[W]hile the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Winfrey*, 92 F.3d at 1025.

Plaintiff argues that the ALJ failed to perform the required analysis to support his findings that plaintiff can return to her past work as a receptionist and user support analyst.

13

She suggests that the ALJ improperly skipped the second step of determining the demands of her past relevant work. She argues that a proper analysis would have shown that her past work required more sitting than plaintiff can perform.

The ALJ's decision reviewed the VE's hearing testimony as to the requirements of plaintiff's past work, noting that (a) *Receptionist* is sedentary exertion as generally and actually performed, semi-skilled work with a Specific Vocational Preparation (SVP) of 4, Dictionary of Occupational Titles (DOT) Code # 237.367-038; and (b) *User Support Analyst*, is sedentary exertion as generally and actually performed, skilled work with a SVP of 7, DOT Code # 032.262-010. (R. 26). The ALJ further explained,

> In comparing [plaintiff's] [RFC] with the physical and mental demands of this work, I find that the claimant was able to perform it as actually and generally performed. The vocational expert, in response to a question that accurately reflected the above [RFC], compared the requirements of the [plaintiff's] past relevant work to [her] restrictions and found that the [plaintiff] was capable of these jobs in both actual and general performance. I, after a review of the evidence and a comparison between the functioning of the claimant and the requirements of these positions, concur with the vocational expert and so find that the claimant could perform this past relevant work. Although the claimant alleges depression that affects her ability to work, as noted above, her mental impairments are not severe. The record as a whole supports that despite her impairments the claimant remains capable of performing her past relevant work as a **Receptionist** and **User Support Analyst.**

*Id*. Accordingly, the ALJ's decision clearly indicates that the ALJ both considered the ALJ's testimony as to plaintiff's past relevant work and performed her own review of the evidence and the requirements of these positions.

Plaintiff argues that the ALJ should have questioned the VE further regarding the "prolonged sitting" required of these jobs, as extended sitting exacerbates her pain. (Doc. 10 at 13). However, the ALJ did so, finding that both jobs are sedentary, consistent with the RFC, which includes sitting, standing, or walking for six hours in a workday. (R. 20). Moreover, the Court has found that substantial evidence supports the ALJ's findings, as discussed above. To the extent plaintiff wished to challenge the ALJ's RFC determination with respect to plaintiff's ability to sit, she has not met her burden to show reversible error. *See Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004) ("The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability.").

Plaintiff suggests that the ALJ failed to account for the findings of Lisa Cox, a rehabilitation counselor, that plaintiff would require re-training. The ALJ in fact explained that she considered Ms. Cox's assessment but found the VE's testimony more persuasive. (R. 26). Moreover, Ms. Cox opined only that plaintiff would need "short-term courses to gain skills for sedentary employment," to update her "many years of experience in the use of computers in a proprietary system," and that plaintiff remained "an excellent candidate for vocational training to return to gainful employment." (R. 475-476). The ALJ's decision reflects an adequate consideration of the relevant evidence at step four, consistent with the applicable legal requirements.

As such, Plaintiff has failed to demonstrate any reversible error in the ALJ's findings as to past relevant work.[4]

## V.     Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is supported by substantial evidence and that the ALJ applied the correct legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

SO ORDERED this 30th day of September, 2022.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge

---

[4]     As the Commissioner's brief notes, plaintiff's argument on this issue "is largely boilerplate and lacks specific developed argumentation as to how the ALJ erred (even at one point referring to the job of a house painter, which was not a job at issue in her case)." (Doc. 15 at 9).